UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RUBEN CABREJA,

    Plaintiff,

v.                                                    Case No. 8:19-cv-296-T-33CPT

SC MAINTENANCE, INC.,
and STEVEN S. CLEMENTS,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

This cause is before me on referral for consideration of the *Plaintiff's Motion for Entry of Final Default Judgment Against Defendants SC Maintenance, Inc. and Steven Clements*. (Doc. 19). For the reasons discussed below, I respectfully recommend that the Plaintiff's motion be granted.

I.

Plaintiff Ruben Cabreja initiated this action in February 2019 under the Fair Labor Standards Act (FLSA) against his former employers, Defendant SC Maintenance, Inc. (SC Maintenance), a "cleaning/janitorial company" located in Polk County, and SC Maintenance's owner/operator, Defendant Steven Clements. (Doc. 1). In brief, Cabreja alleges he worked for the Defendants from September 2018 to October 2018 cleaning floors at night in stores such as Ross, Walgreens,

Publix, and Big Lots. *Id.* at 2, 4. He asserts he was paid $100 per night for his services and was classified as a non-exempt employee. *Id.* at 4. Although he worked more than eight hours a night, six nights a week, Cabreja states he was not paid an overtime premium when he logged in excess of forty hours in a work week. *Id.* at 5. In addition, he claims the Defendants failed to pay him altogether for several days of labor. *Id.*

Based on these allegations, Cabreja asserts three counts: willful violation of the FLSA for the Defendants' failure to pay him overtime compensation (Count I); unpaid wages under Florida common law (Count II); and willful violation of the FLSA due to the Defendants' failure to pay him the statutory minimum wage (Count III). *Id.* at 6-7. To redress these alleged harms, Cabreja seeks unpaid overtime and minimum wage compensation, liquidated damages, common-law unpaid wages, interest, costs, and attorney's fees. *Id.* at 8.

Defendants Clements and SC Maintenance were served with the summons and complaint on February 14 and February 27, 2019, respectively. (Docs. 8, 10). Neither Defendant responded to the complaint, however, and the Clerk of Court entered defaults against each of them in March 2019. (Docs. 13, 17).

Cabreja thereafter filed the instant motion seeking the entry of a default judgment pursuant to Federal Rule of Civil Procedure 55(b)(1), or, in the alternative, Rule 55(b)(2). (Doc. 19). Cabrera executed and filed an affidavit in support of his claims, and included a declaration from his attorney, Cynthia Gonzalez, pertaining to the attorney's fees and costs incurred in pursuing the action. *Id.*

On May 13, 2019, the Court directed Cabreja's counsel to supplement her affidavit to itemize the time she expended on this litigation. (Doc. 21). In accordance with that Order, counsel filed a supplemental affidavit on May 20, 2019. (Doc. 22). As a result, the matter is now ripe for the Court's resolution.

II.

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once a Clerk's default has been entered, a plaintiff may apply for a default judgment to either the Clerk or the Court. Fed. R. Civ. P. 55(b).

Before granting such a motion, the courts must "ensure that it has jurisdiction over the claims and parties." *Sec. and Exch. Comm'n v. Martin*, 2019 WL 1649948, at *2 (M.D. Fla. Apr. 1, 2019), *report and recommendation adopted*, 2019 WL 1643203 (M.D. Fla. Apr. 16, 2019); *see also Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) ("[W]hen entry of judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.") (quotation omitted).

Once jurisdiction is established, the Court may enter default judgment if "there is 'a sufficient basis in the pleadings for the judgment entered.'" *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (per curiam) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.

3

1975)).  The showing required in this context "is similar to the factual showing necessary to survive a motion to dismiss for failure to state a claim." *Graveling v. Castle Mortg. Co.*, 631 F. App'x 690, 698 (11th Cir. 2015) (citing *Surtain*, 789 F.3d at 1245); *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim."). Thus, a court looks to see whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  However, "while a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (internal alteration and quotation omitted).

If a claim for liability is adequately pleaded, the court must then assess its ability to measure damages. To this end, the "court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see also Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects the basis for award). "Rather than merely *telling* the Court in summary fashion what its damages are, a plaintiff seeking default judgment must *show* the Court what those

damages are, how they are calculated, and where they come from." *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp. 2d 1287, 1294 (S.D. Ala. 2010).

If warranted, the court may conduct an evidentiary hearing on the issue of damages. Fed. R. Civ. P. 55(b)(2)(B). Such a hearing is "not a *per se* requirement," however, and is not mandated where the sought-after damages amount is a liquidated sum, is capable of mathematic calculation, or "where all [the] essential evidence is already of record." *SEC v. Smyth*, 420 F.3d 1225, 1232, n.13 (11th Cir. 2005) (citing *S.E.C. v. First Fin. Group of Tex., Inc.*, 659 F.2d 660, 669 (5th Cir. 1981)).

Each of the considerations—jurisdiction, liability, and damages—is addressed in turn below.

### III.

### A.

Beginning with jurisdiction, it is clear that the Court has federal-question jurisdiction over Cabreja's FLSA claims. 29 U.S.C. § 216(b) (FLSA actions may be brought "in any Federal or State court of competent jurisdiction"); 28 U.S.C. § 1331 (conferring original jurisdiction for "all civil actions arising under the Constitution, laws, or treaties of the United States"); *Quinn v. Dermatech Research, LLC*, 2019 WL 1586736, at *1 (M.D. Fla. Apr. 12, 2019) ("This Court has federal question subject matter jurisdiction due to the FLSA claims.").

The Court also has supplemental jurisdiction over Cabreja's related state-law unpaid wage claim in light of its original jurisdiction over the FLSA claims. 28 U.S.C. § 1367 (providing supplemental jurisdiction over claims "so related to claims

in the action within [the Court's] original jurisdiction that they form part of the same case or controversy"); *Sims v. Unation, LLC*, 292 F. Supp. 3d 1286, 1299 (M.D. Fla. 2018) (finding court had supplemental jurisdiction over plaintiff's state-law unpaid wage claim where it had original jurisdiction under the FLSA).

The Court likewise has personal jurisdiction over the Defendants. As alleged in the complaint, SC Maintenance is a Florida corporation with its principal place of business in Polk County. (Doc. 1 at 2-3); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (noting that a corporate defendant's place of incorporation and/or principal place of business is a "paradigm" basis for the exercise of general jurisdiction). As also alleged in the complaint, Clements is a "resident" of the State of Florida who owned and operated SC Maintenance in Polk County. (Doc. 1 at 2-3).[1] Furthermore, the returns of service filed in this action evidence that SC Maintenance was properly served with the summons and complaint through its Registered Agent/President in accordance with Florida Statute § 48.081(3)(b), and that Clements was personally served in accordance with Florida Statute § 48.031(1)(a). (Docs. 8, 10).

As a result, the Court has jurisdiction over both the claims and the parties.

---

[1] I recognize that "domicile," not residency, is the relevant inquiry for general personal jurisdiction. *Goodyear*, 564 U.S. at 924. Given Clements's operation of a business in Florida and the personal service upon him in this state, however, I find that personal jurisdiction is satisfied. Fed. R. Civ. P. 4(k)(1)(A) (service of process is effective to establish personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located").

B.

Turning to the issue of liability, I find that Cabreja adequately pleads each of his claims. As noted above, Cabreja asserts three counts, two arising under the FLSA's overtime and minimum wage provisions (Counts I and III) and one under Florida common law for unpaid wages (Count II). (Doc. 1).

### 1. *Cabreja's FLSA Claims*

I address the two FLSA claims together. With limited exceptions not applicable here, the FLSA "requires employers who meet its preconditions to pay workers a minimum wage and to provide overtime pay where workers exceed forty hours per week." *Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1220 (11th Cir. 2010) (citing 29 U.S.C. § 206(a) (minimum wage) and § 207(a) (overtime pay)). In particular, section 206(a) mandates FLSA employers pay employees minimum wages, while section 207(a)(1) obligates employers to pay overtime wages at a rate of one and one-half times the employee's regular rate of pay for hours worked in excess of forty hours in a work week.

To trigger liability under the FLSA's overtime and minimum wage provisions, a plaintiff must show: (1) an employee-employer relationship exists between the parties, and (2) he is "covered" by the FLSA. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011).

With respect to the former, the FLSA defines the terms "employee" and "employer" broadly. *Id.* An employee is "any individual employed by an employer," 29 U.S.C. § 203(e)(1), while an "employer" includes "any person acting

directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d).  As defined, an employer is not only a company for whom the employee directly works but also includes "any person who (1) acts on behalf of that employer and (2) asserts control over conditions of the employee's employment." *Josendis,* 662 F.3d at 1298 (citation omitted).

Cabreja's allegations sufficiently demonstrate an employee-employer relationship between him and the Defendants.  He claims, in particular, that he was employed by SC Maintenance and Clements as a floor cleaner from September to October 2018.  (Doc. 1 at 4).  He also alleges that Clements: "a) exercised control over the day-to-day operations of [SC Maintenance]; b) had personal and direct involvement in employment affairs (including [Cabreja's]); c) hired and fired employees; d) established employee work schedules and regulated [Cabreja's] hours; e) controlled terms of employment (including [Cabreja's]); f) had the authority to set employee wages; and g) discussed the subject of wages with [Cabreja]."  *Id.* at 3; *see also Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1309 (11th Cir. 2013) ("[W]e have joined the 'overwhelming weight of authority' and held that 'a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'") (citations omitted); *Elwell v. Pierce N Tell, LLC*, 2014 WL 12617813, at *2 (M.D. Fla. Mar. 6, 2014) (holding that allegations about a company's owner and operator with direct supervisory responsibility over plaintiff were sufficient to state a

8

cause of action under the FLSA against an individual and company) (citing *Patel v. Wargo*, 803 F. 2d 632, 638 (11th Cir. 1986)).

With respect to the coverage element, "a plaintiff employee must establish one of two types of coverage under the FLSA: (1) 'enterprise coverage,' which applies to the defendant employer, or (2) 'individual coverage,' which applies to the plaintiff employee." *Gaviria v. Maldonado Brothers, Inc.*, 2014 WL 12531281, at *3 (S.D. Fla. Mar. 31, 2014) (citing *Martinez v. Palace*, 414 F. App'x 243, 244-45 (11th Cir. 2011) and *Thorne v. All Restoration Servs.*, 448 F.3d 1264, 1265-66 (11th Cir. 2006)).[2] Of relevance here, "[a]n employer falls within the FLSA's enterprise coverage if it meets two requirements: (1) it 'has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person' and (2) has an 'annual gross volume of sales made or business done,'" which is in excess of $500,000. *Id.* (quoting 29 U.S.C. § 203(s)(1)(A)); *see also Polycarpe*, 616 F.3d at 1220.

Cabreja pleads in his complaint that SC Maintenance qualifies as an enterprise because it had annual gross volume of sales exceeding $500,000 per year and was engaged in commerce "by accepting payment from its customers through the

---

[2] While Cabreja alleges both "enterprise" and "individual" coverage, his allegations in support of the latter are meager. (Doc. 1 at 4); *see also Cloer v. Green Mountain Specialties Corp.*, 2019 WL 568358, at *1 (M.D. Fla. Jan. 2, 2019) ("Without factual allegations sufficient to establish either individual or enterprise coverage, the complaint cannot support entry of a default judgment.") (citation omitted). As a result, I focus on his assertion of enterprise liability.

use of credit cards and checks from banks located outside the state of Florida, by purchasing cleaning materials, chemicals, tools, and a plethora of other items, each manufactured across state lines for the purpose of providing floor/building cleaning and maintenance services." (Doc. 1 at 3-4). Accepting these allegations as true, I find they suffice to show enterprise coverage. *See Polycarpe*, 616 F.3d at 1220-29 (explaining the scope of enterprise coverage); *Ceant v. Aventura Limousine & Transp. Serv., Inc.*, 874 F. Supp. 2d 1373, 1378 (S.D. Fla. 2012) ("[T]o properly allege . . . enterprise coverage, [the plaintiff] need not do much. Aside from stating the nature of his work and the nature of [his employer's] business, he must provide only straightforward allegations connecting that work to interstate commerce.") (collecting cases).

Once a plaintiff has established that an employment relationship and coverage exist, the remaining elements "to state a claim of a FLSA violation are quite straightforward." *Sec'y of Labor v. Labbe*, 319 F. App'x 761, 763 (11th Cir. 2008). All that "must be shown [is] simply a failure to pay overtime compensation and/or minimum wages to covered employees." *Id.* Although *Labbe* is a non-binding, unpublished opinion and was decided pre-*Iqbal*, its teachings on the "straightforward" pleading requirements for FLSA claims are instructive.[3] In short,

---

[3] *Labee* must be read in light of the Supreme Court's decision in *Iqbal*. As noted by the Ninth Circuit:

> Although we agree with the Eleventh Circuit that detailed factual allegations regarding the number of overtime hours worked are not required to state a plausible claim, we do not agree that conclusory allegations that merely recite the statutory language are adequate. Indeed, such an approach runs

an FLSA overtime plaintiff must plead sufficient facts, plausible on their face, to demonstrate he worked more than forty hours in at least one workweek and the defendant failed to pay the requisite premium for those overtime hours. *Cooley v. HMR of Alabama, Inc.*, 259 F. Supp. 3d 1312, 1319 (N.D. Ala. 2017); *see also Stafflinger v. RTD Constructions, Inc.*, 2015 WL 9598825, at *2 (M.D. Fla. Dec. 14, 2015), *report and recommendation adopted*, 2016 WL 48110 (M.D. Fla. Jan. 5, 2016). An FLSA minimum-wage plaintiff must likewise plead sufficient facts, plausible on their face, to demonstrate the defendant failed to pay him the minimum wage as required by the FLSA. *Moser v. Action Towing Inc. of Tampa*, 2017 WL 10276702, at *1 (M.D. Fla. Feb. 6, 2017) (citation omitted).

Cabreja satisfies these pleading requirements. In support of his overtime claim, he alleges that he worked in excess of forty hours a week during the time he was employed and that the Defendants failed to compensate him at the time-and-a-half rate. (Doc. 1 at 1, 5-6). And, with respect to his minimum wage claim, Cabreja alleges that the Defendants did not pay him at all for several workdays. *Id.* at 2, 7.

In light of the above, I find that the well-pleaded allegations underlying Counts I and III establish the Defendants' liability to Cabreja for violations of the

---

afoul of the Supreme Court's pronouncement in *Iqbal* that a Plaintiff's pleading burden cannot be discharged by "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action . . . ."

*Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 644 (9th Cir. 2014), *as amended* (Jan. 26, 2015) (internal citations omitted).

FLSA's wage and hour provisions due to their non-payment of overtime and minimum wages.

### 2. *Common Law Unpaid Wage Claim*

Claims for unpaid wages under Florida common law are typically pleaded as breach of contract claims. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1271 (11th Cir. 2009). In order to state a valid breach of contract claim, "Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Id.* at 1272 (citation omitted).

Cabreja frames his unpaid wage claim as one for breach of his employment agreement (Doc. 19 at 3) and sufficiently pleads each of the above elements in his complaint. In particular, he avers that the Defendants agreed to compensate him at a rate of $100 per night but failed to abide by that agreement by not paying him, thereby causing him to suffer damages. (Doc. 1 at 4, 6-7). Based on these well-pleaded allegations, I conclude that the Defendants are liable to Cabreja on his common law unpaid wage claim (Count II).

### C.

On the matter of damages, an evidentiary hearing is unnecessary because, as detailed below, the amounts claimed by Cabreja are for a sum certain subject to easy calculation and supported by affidavits. (Docs. 19-1, 19-2, 22); *see also Clough v. McClure Constr. Co., LLC*, 2019 WL 1559661, at *2 (M.D. Fla. Mar. 25, 2019) ("A plaintiff may establish his or her damages by affidavit.") (citing *Adolph Coors*, 777

F.2d at 1544), *report and recommendation adopted sub nom. Clough v. McClure Constr. Co, LLC*, 2019 WL 1558667 (M.D. Fla. Apr. 10, 2019).

### 1. *Actual and Liquidated Damages*

Any employer who violates the FLSA's minimum wage and overtime provisions is "liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Liquidated damages must be awarded absent a finding that the employer acted in good faith and under the reasonable belief that it was in compliance with the FLSA. *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987) ("[L]liquidated damages are mandatory absent a showing of good faith.") (citation omitted); *see also Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008).

In support of his FLSA overtime damages, Cabreja attests in his affidavit that he worked twenty-six hours of overtime per week for the two weeks he was employed by the Defendants. (Doc. 19-1). Based on a half-time rate calculation of $4.55 per hour, he claims he is owed $236.60 in overtime compensation and an equal sum for liquidated damages. *Id.*

As for his common-law unpaid wage damages, Cabreja submits he was not compensated for six days of work and accordingly asserts he is owed straight unpaid wages of $600 (which includes his FLSA minimum wage damages). *Id.*

In light of this evidence presented, I find that Cabreja is entitled to actual and liquidated damages in the amount of $1,073.20.[4]

### 2. *Attorney's Fees and Costs*

In addition to the above damages, both the FLSA and Florida law provide that successful plaintiffs, like Cabreja, are entitled to an award of reasonable attorney's fees and "costs of the action." 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); Fla. Stat. § 448.08 ("The court may award to the prevailing party in an action for unpaid wages costs of the action and a reasonable attorney's fee."). Costs are limited to those enumerated in 28 U.S.C. § 1920. *Glenn v. Gen. Motors Corp.*, 841 F.2d 1567, 1575 (11th Cir. 1988) ("[N]othing in the legislative history associated with Section 216(b)'s passage suggests that Congress intended the term 'costs of the action' to differ from those costs as now enumerated in 28 U.S.C.A § 1920."). What constitutes a reasonable fee, however, is a matter within the court's sound discretion. *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988).

Beginning with costs, as reflected in attorney Gonzalez's declaration, Cabreja seeks $482.50, consisting of $400 for the Clerk's filing fee and the remainder for service of process charges. (Doc. 19-2). These costs are properly taxable as "fees of the clerk and marshal" under section 1920. *U.S. Equal Emp't Opportunity Comm'n v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000) (holding that private process server

---

[4] This figure is calculated as follows: $600 (unpaid wages) + 236.60 (overtime

14

costs are taxable under section 1920(1)).  As such, Cabreja is entitled to an award of costs in the requested amount.

With regard to attorney's fees, Cabreja seeks $3,160 for 7.9 hours expended by attorney Gonzalez at an hourly rate of $400.  (Docs. 19-2, 22).  The first step in calculating whether such constitutes a reasonable fee is to determine the "lodestar," which is the product of the reasonable hours expended times a reasonable hourly rate.  *Padurjan v. Aventura Limousine & Transp. Serv., Inc.*, 441 F. App'x 684, 686 (11th Cir. 2011) (per curiam) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see also Am. Civil Liberties Union v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999).

In determining the reasonableness of the hours expended, courts exclude "excessive, redundant, or otherwise unnecessary" hours an attorney could not appropriately bill the client or opposing counsel in the exercise of good billing judgment.  *Norman*, 836 F.2d at 1301 (quoting *Hensley*, 461 U.S. at 434 & 437).  "[A] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (quoting *Norman*, 836 F.2d at 1299).

Once the lodestar has been determined, a court may then make adjustments "as necessary" given the circumstances of the case.  *Padurjan*, 441 F. App'x at 686 (quoting *Blum v. Stenson,* 465 U.S. 886, 888 (1984)).  Lodestar adjustments may

---

compensation) + 236.60 (liquidated damages) = $1,073.20.

account for whether the results obtained were exceptional, excellent, or of partial or limited success.  *Norman*, 836 F.2d at 1302.

Based upon my review of the record, I find that the number of hours expended by attorney Gonzalez on this case is reasonable.  As evidenced by her supplemental affidavit (Doc. 22), Gonzalez spent 7.9 hours to, *inter alia*, meet with Cabreja, prepare the complaint, review incoming Court orders, draft a Court-requested status report, and compile the instant motion for default judgment as well as the two motions for Clerk's default.  In my estimation, the time incurred conducting these tasks and litigating this action is well within reason.

Given Gonzalez's more than twenty years of experience, her skill, and her reputation, the requested hourly rate of $400 is also reasonable—although admittedly at the high end of rates charged for similar cases in this community.  *Raymond v. Buffalo City Bar & Grill, Inc.*, 2018 WL 4924351, at *2 (M.D. Fla. Oct. 10, 2018) (approving attorney Gonzalez's rate of $400 for 5.9 hours expended to obtain default judgment in FLSA case) (Covington, J.); *but see De Leon v. Magnum Coatings, Inc.*, 2017 WL 8794773, at *2 (M.D. Fla. Nov. 7, 2017), *report and recommendation adopted*, 2018 WL 1796227 (M.D. Fla. Jan. 10, 2018) (reducing hourly rate in FLSA case from $400 to $350 and collecting cases in support).

Multiplying the reasonable number of hours incurred and the reasonable hourly rate, the lodestar for attorney's fees here is $3,160.  I see no grounds to depart from this lodestar amount given the circumstances of this case.

IV.

In light of all of the above, I recommend that the *Plaintiff's Motion for Entry of Final Default Judgment Against Defendants SC Maintenance, Inc. and Steven Clements* (Doc. 19) be granted and that default judgment be entered in favor of the Plaintiff and against the Defendants in the total amount of $4,715.70.

Respectfully submitted this 19th day of June 2019.

*[signature]*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies furnished to:
Honorable Virginia M. Hernandez Covington, United States District Judge
Counsel of record